IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                   No. 16-20054-JTF-dkv

JASON HENDERSON,

    Defendant.

---

REPORT AND RECOMMENDATION ON DEFENDANTS MOTION TO SUPPRESS

---

On March 31, 2016, the grand jury returned an indictment charging the defendant, Jason Henderson ("Henderson"), with one count of being a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1) and one count of possession of marijuana in violation of 21 U.S.C. 844(a).

Before the court is Henderson's July 22, 2016 motion to suppress all evidence seized by law enforcement officials following a traffic stop on October 16, 2015. Henderson was a passenger in a vehicle, driven by Alicia Miller ("Miller"), which was stopped because the vehicle had a cracked windshield in violation of Memphis City Ordinance § 21-338(b). Henderson claims that officers conducted an illegal pat-down of his person and all evidence obtained as a result should be suppressed. The

government insists that no frisk ever occurred. The motion was referred to the United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)-(C).

Pursuant to the referral, an evidentiary hearing was held on October 25, 2016. This court heard testimony from four different witnesses – two government witnesses and two defense witnesses. Five evidentiary exhibits were introduced into evidence: (1) Ex. 1 – photographs of the cracked windshield; (2) Ex. 2 – Memphis City Ordinance § 21-338(b); (3) Ex. 3 – video of the stop; (4) Ex. 4 – MPD Record of Arrest; and (5) Ex. 5 – Transcript of the deposition of Alicia Miller. At the hearing, Henderson requested and was granted additional time to file a supplemental brief addressing the legal issues but Henderson never filed any supplemental brief, and the time to do so has expired.

After careful consideration of the statements of counsel, the testimony of the witnesses, the evidentiary exhibits, and the entire record in this case, this court submits the following findings of fact and conclusions of law and recommends that the motion to suppress be denied.

I. PROPOSED FINDINGS OF FACT

On October 16, 2015, Officer Aaron Putman ("Officer Putman"), who had been an officer with the Memphis Police

Department ("MPD") for six years, was patrolling the Airways Boulevard Precinct along with his partner, Officer Michael Bartlett ("Officer Bartlett"). They were traveling in separate, marked police vehicles. Around 9:00 in the evening, Officer Putman observed a red vehicle with two passengers, both in the front seats, turning right off Hemlock Street onto South Parkway, heading east. Officer Putman's attention was first drawn to the vehicle because it was turning off Hemlock Street, which is known for drug trafficking and use. Officer Putman testified that he then observed that the red vehicle had a cracked front windshield, obstructing the driver's view and creating a "prism effect" from oncoming traffic. Relying on Memphis City Ordinance § 21-338(b), which prohibits the operation of vehicles with broken windshields that impair or obstruct the driver's vision, Officer Putman decided to stop the red vehicle. He alerted Officer Bartlett that he was going to make a stop. When Officer Bartlett caught up to Officer Putman about a minute later, Officer Putman turned on his blue lights and siren and pulled over the red car at the corner of South Parkway and Willett Street, in front of a small convenience store.

After the red car came to a stop, Officer Putman testified that he approached the driver's side on foot, while Officer

Bartlett approached the passenger's side on foot. The driver was a female African-American; the passenger was a male African-American. It was dark outside, but street lights illuminated the vehicle. Officer Putman identified the passenger as Henderson.

Officer Putman stated that when the driver, later identified as Miller, rolled down her window, he smelled a "faint odor of marijuana" coming from the vehicle. He did not see anything illegal in plain view, but he testified that "drugs and weapons go together." Officer Putman asked Miller to provide her driver's license and she did so. He then asked Miller to exit the vehicle and they walked to Officer Putman's patrol car, which was parked behind Miller's vehicle. Officer Putman recalled that Miller stated that she attended church on Hemlock Street; he described her as very well-spoken and well-dressed. Officer Putman testified that he asked Miller if she had anything illegal on her person or in the car, and she said no. Officer Putman then asked if he could look through Miller's vehicle and she "freely consented." He believed that there was marijuana in the car.

Meanwhile, according to Officer Putman's testimony, Officer Bartlett was watching Henderson, who was still seated in the front passenger seat. Officer Bartlett signaled to Officer

Putman that something was wrong and they needed to ask Henderson to exit the vehicle. Neither Officer Putman nor Officer Bartlett could recall what the signal was exactly, but they had worked together for two years and were familiar with each other. No hand or body signal is visible on the video recording of the stop.

Officer Bartlett then asked Henderson to exit the car and "passed" him to Officer Putman to be patted down. Officer Putman said that Henderson exited the vehicle quickly, surprising Officer Putman. When Henderson exited the vehicle, he had his hands in the air, although the officers did not ask him raise his hands. At this time, Miller was standing behind her car, in front of Officer Putman's police cruiser, and behind Officer Putman. Officer Putman instructed Henderson to walk behind Miller's vehicle. According to the testimony of Officer Putnam, he placed his right hand on Henderson's back or shoulder to guide him to the correct spot on the vehicle for a pat-down. The video depicts Officer Putnam placing his hand on Henderson. He also asked Henderson to place his hands on the back of Miller's vehicle. Controlling Henderson, he stated, was important for officer safety reasons; a suspect could have a gun. Officer Putman testified that Henderson was not free to leave.

5

Before Officer Putman was able to perform a pat-down, Henderson "spun off" the car and ran away. Officers Putman and Bartlett began to pursue Henderson on foot. After Henderson had taken approximately two steps, Officer Putman heard a gun fall on the ground. He yelled to Officer Bartlett that Henderson had a gun, then he secured the weapon and told Miller to stay where she was. Officer Bartlett continued to pursue Henderson on foot, and Officer Putman followed in his police cruiser. Officer Bartlett apprehended Henderson, and Henderson was taken into custody.

The government's second witness, Officer Bartlett, largely corroborated Officer Putman's testimony. Officer Bartlett testified that he remained with Henderson, who was seated in the passenger seat of Miller's car, while Officer Putman talked with Miller. He testified that he could smell the odor of raw marijuana from his position on the passenger side of the vehicle. Officer Bartlett described Henderson as fidgety and nervous; Henderson was moving his arms and shoulders around quite a bit, turning toward the center console in the car, and looking back at the officers repeatedly. Officer Bartlett stated that gave him cause for concern, because Henderson "could grab a weapon — he was free to do anything at that point." Officer Putman indicated that Miller had given consent to search the vehicle, and Officer

6

Bartlett asked Henderson to step out of the car so that he could search Henderson's general area. Officer Bartlett then stated that Henderson ran away before Officer Putman was able to frisk him. He heard a metallic object hit the ground shortly after Henderson began running, and Officer Putman yelled "gun!" Officer Bartlett pursued Henderson on foot for about one hundred yards before he was able to apprehend him. Officer Putman caught up to them in his police cruiser. Officer Bartlett searched Henderson after arresting him and found a small amount of marijuana in his pocket. Henderson was arrested and charged with felon in possession of a firearm, evading arrest, and possession of marijuana. (Ex. 4.) During their testimonies, both officers watched video footage from the convenience store, which depicted the sequence of events described by Officers Bartlett and Putman. (Ex. 3.)

Race Bennett ("Bennett"), an investigator with the Public Defender's Office, testified for the defense. He has thirteen years of investigative experience and has been trained in how to take photographs for an investigation. Bennett identified photographs he took of Miller's car. (Ex. 1.) He testified that in his opinion, the crack on the windshield would not have obstructed Miller's view.

Miller's deposition testimony was admitted read into evidence. (Ex. 5.) She testified that Officer Putman pulled her over on October 16, 2015 in front of a small convenience store. She stated that Officer Putman asked her whether she was safe and what she was doing near Hemlock Street. Miller explained that she was picking up Henderson to go see a movie. She also testified that the officers did not ask her any specific questions about Henderson until after he fled and was arrested. She was in close proximity to Officer Bartlett and Henderson, but she never heard Officer Bartlett ask Henderson any questions. Miller testified that she gave Officer Putman consent to search her vehicle, but he did not have a chance to search the car before Henderson fled. Miller received a ticket for her cracked windshield.

## II. PROPOSED CONCLUSIONS OF LAW

Henderson contends that the warrantless stop of the vehicle and search of his person while a passenger in the vehicle driven by Miller violated his Fourth Amendment rights because no grounds existed for the search of his person.

A. <u>Credibility of the Witnesses</u>

The court is given wide latitude in making its credibility

determinations. *United States v. Haynes*, 301 F.3d 669, 679 (6th Cir. 2002)(citing *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 573-75 (1098)). "In assessing credibility, a court considers numerous factors, ultimately relying on the common sense tests of reason and logic." *United States v. Caldwell*, No. 1:13-CR-128, 2015 WL 179583, at *9 (E.D. Tenn. Jan. 14, 2015). The police officers in this case are credible. Officer Putman's and Officer Bartlett's testimonies corroborated each other's testimony. Photo and video evidence also supported their testimonies. In addition, the fact that marijuana was found in Henderson's pocket corroborates their testimony that they detected a faint odor of marijuana emanating from the car.

B. The Validity of the Traffic Stop

A traffic stop is a "seizure" subject to the reasonableness requirement of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *United States v. Guajardo*, 388 F. App'x 483, 487 (6th Cir. 2010)("The Fourth Amendment's prohibition against unreasonable searches and seizures by the government 'extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest.'" (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002))). Recently, in *Brendlin v. California*, 551 U.S. 249, 251 (2007), the Supreme Court held that

9

everyone in the vehicle — the driver and the passengers - are all seized from the moment the car is stopped for a traffic violation until the stop is completed.

In the Sixth Circuit, the applicable standard to justify a police officer's stop of a vehicle based on a traffic violation depends on whether the violation is an ongoing or completed offense. *United States v. Simpson*, 520 F.3d 531, 540-41 (6th Cir. 2008). The Sixth Circuit held in *Simpson* that based on its prior decision in *United States v. Freeman*, 209 F.3d 464 (6th Cir. 2000), officers must have probable cause to initiate a traffic stop for a completed misdemeanor, such as veering into an emergency lane, but only reasonable suspicion for a traffic stop for an ongoing misdemeanor, such as driving on a suspended license. *Simpson*, 520 F.3d at 541; *Freeman*, 209 F.3d at 466-67 (finding police officer lacked "probable cause" to stop a vehicle for veering out of its lane); *Gaddis v. Redford Twp.*, 364 F.3d 763, 711 n.6 (6th Cir. 2004)(holding that reasonable suspicion standard governs a stop for driving under the influence); *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007). Reasonable suspicion exists when the investigating officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e]

intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "Reasonable suspicion requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard*.*" *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012)(citations omitted). On the other hand, "the requirements of probable cause are satisfied where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005)(citations omitted).

At the hearing, relying on *Simpson,* the government argued that the Sixth Circuit has not yet decided the issue of whether a violation of a municipal ordinance — which carries no criminal penalties — requires reasonable suspicion or probable cause to justify an investigatory stop. In a footnote, the *Simpson* panel explained: "Resolving whether *Freeman* controls in the context of a civil traffic infraction, as *Gaddis* seems to assume (even though *Freeman* did not involve a civil infraction) is not necessary to the disposition of this case." *Simpson*, 520 F.3d at n.11. In decisions subsequent to *Simpson*, the Sixth Circuit,

11

however, has indicated that probable cause, and not the lesser standard of reasonable suspicion, is required to effectuate a traffic stop for a civil infraction. *See Lyons*, 687 F.3d at 763 ("In order to effect a traffic stop, an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity.") (citing *United States v. Blair*, 524 F.3d 740, 748 (6th Cir.2008)); *Blair*, 524 F.3d at 748 (applying the probable cause standard to an officer's stop for a tag light violation, but deciding the case on other grounds); see also United States v. Ray, 597 F. App'x 832, 834 (6th Cir. 2015)(citing *Lyons*, 687 F.3d at 763 ("In order to effect a traffic stop, an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity.")); *United States v. Hughes*, 606 F.3d 311, 320 (6th Cir. 2010)(applying probable cause standard to justify stop of a vehicle for violation of a city ordinance.)

Here, Officer Putman had probable cause to justify the stop based on the violation of the city ordinance. Officer Putman testified that he pulled over Miller's vehicle due to a cracked windshield that he believed obstructed her view, in violation of Memphis City Ordinance § 21-338(b) which provides that "[i]t shall be unlawful to operate any motor vehicle in the city upon

which the glass of the windshield . . . is broken, cracked, pitted, discolored, marred or otherwise defective so as to constitute an impairment or obstruction to the vision of the operator." Officer Putman described the crack as creating a "prism" effect from the light from oncoming traffic, which supports his opinion that it was obstructing Miller's view. Also, the crack was on the driver's side in front of the driver. The existence of the crack on Miller's front windshield was corroborated by Officer Bartlett, Bennett, Miller, and the photographs of Miller's vehicle that were introduced into evidence. Henderson's argument that the crack in the windshield did not obstruct the vision of the driver and therefore no violation of the municipal ordinance occurred is without merit. The issue is not whether an actual violation of the ordinance in fact had occurred but whether Officer Putnam had a reasonable belief that the crack obstructed the vision of the driver, which he did. The stop of Miller's vehicle was a valid and lawful stop.

B. <u>The Scope of the Traffic Stop</u>

The next issue is whether it was reasonable for Officers Putman and Bartlett to order Henderson out of Miller's vehicle. "An ordinary traffic stop [] is more akin to an investigative

detention rather than a custodial arrest, and the principles announced in *Terry* . . . apply to define the scope of reasonable police conduct." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)(citing *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996)). "Once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *United States v. Bonilla*, 357 F. App'x at 696 (6th Cir. 2009)(quoting *Pennsylvania v. Mimms*, 434 U.S. 107, 111 n.6 (1977)); *see also United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013)(quoting the same). In *Maryland v. Wilson*, 519 U.S. 408, 413-14 (1997), the Supreme Court held that "the *Mimms* rule applies to passengers as well as drivers," based on "the same weighty interest in officer safety." "A passenger's motivation to use violence during the stop to prevent apprehension for a crime more grave than a traffic violation is just as great as that of the driver," and "the additional intrusion on the passenger is minimal." *Wilson*, 519 U.S. at 414-15.

Ordering Henderson to step out of the car was only a *de minimis* intrusion of his personal liberty, and it did not violate

14

his Fourth Amendment rights. *See Mimms*, 434 U.S. at 111. In addition, Miller had given consent to Officer Putnam to search her vehicle, and Officer Putnam had communicated her consent to Officer Bartlett. *See United States v. French*, 974 F.2d 687, 694 (6th Cir. 1992)(holding that a driver's consent to search his vehicle was effective as to both the driver and the passenger); *United States v. Guillen*, 145 F.3d 1334, at *3 (6th Cir. 1998)(holding the same). Thus, the officers did not violate Henderson's Fourth Amendment Rights in asking him to step out of the vehicle.

C. <u>Whether the Gun was Discovered during a Frisk of Henderson</u>

The remaining issue is whether the discovery of the weapon was the result of an unlawful search which requires suppression as fruit of the poisonous tree. The Supreme Court in *Terry* held that a defendant is "searched" when the police officer "[take] him and pat[] down the outer surfaces of his clothing." *Terry*, 392 U.S. at 19. Here, Henderson was without doubt "seized," but he was not frisked. Officer Putman guided Henderson to the back of Miller's vehicle and placed his right hand on Henderson's back to take control of the situation for safety reasons and in order to position Henderson for a pat-down. Henderson stepped out of the vehicle with his hands up and Miller was standing behind

15

Officer Putman. Officer Putman testified that both of these facts posed concerns for officer safety. Officer Putman was about to pat-down the outer surfaces of Henderson's clothing when Henderson turned, ran away, and the pistol dropped to the ground. Officer Putman did not frisk Henderson before he ran, and Officer Putman's discovery of the weapon was not the result of a frisk.

Even if Officer Putnam's conduct in positioning Henderson for a pat-down were considered to be a frisk, the frisk of Henderson did not violate his Fourth Amendment rights. The critical issue is the authority of "police officers to 'stop and frisk' a passenger in a motor vehicle temporarily seized upon police detection of a traffic infraction." *Arizona v. Johnson*, 129 S.Ct. 781, 784 (2009). This is the very same issue the United States Supreme Court confronted in *Johnson*. In that case, the Court held:

> [I]n a traffic-stop setting, the first *Terry* condition - a lawful investigatory stop - is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor *reasonable suspicion* that the person subjected to the frisk is armed and dangerous.

16

*Id*. at 784 (emphasis added). The Supreme Court held that the pat-down of Johnson was lawful and remanded the case to the Arizona Court of Appeals for further proceedings not inconsistent with its opinion. *Id*. at 788. In doing so, the Court noted: "The Arizona Court of Appeals assumed, 'without deciding, that [the officer] had reasonable suspicion that Johnson was armed and dangerous.'" *Id.* at 788 n.2.

During a traffic stop, officers may take any measures that are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Newell*, 596 F.3d 876, 879 (8th Cir. 2010)(quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). The reasonableness of law enforcement's actions during a traffic stop depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Mimms*, 434 U.S. at 109. The concern for officer safety far outweighs *de minimis* intrusions. *Id.*

The Sixth Circuit has concluded that officers who stop a person who is "reasonably suspected of carrying drugs" are "entitled to rely on their experience and training in concluding that weapons are frequently used in drug transactions," and to

17

take reasonable measures to protect themselves. *United States v. Jacob*, 377 F.3d 573, 579-80 (6th Cir. 2004)(quoting *United States v. Heath*, 259 F.3d 522, 530 (6th Cir. 2001). In *United States v. Borne*, 239 F. App'x 185, 187 (6th Cir. 2007), the court noted that the trooper was justified in conducting a *Terry* frisk of the defendant's person for weapons during a traffic stop, given his testimony that methamphetamine traffickers in that area were known to go armed and the presence of the chemical odor of methamphetamine.

In view of the totality of the circumstances in the present case, Officers Putman and Bartlett had reasonable suspicion to frisk Henderson. Officer Putman and Officer Bartlett provided specific and articulable facts about Henderson's behavior and the circumstances surrounding the stop that reasonably raised their suspicion that Henderson could be armed and dangerous. Officer Putman detected a "faint odor of marijuana" emanating from Miller's vehicle; he testified that, in his experience, "guns and drugs go together." Officer Bartlett testified that Henderson seemed "very nervous" while waiting in the passenger seat and that he was fidgeting toward the center console and his waistband. As was explained above, Officer Bartlett did not observably signal to Officer Putman that Henderson was nervous or

18

moving in such a way, but he did communicate to him in some fashion that there was an issue and that Henderson needed to be patted down. The two officers had worked together for two years at the time of the stop, and they were familiar with one another's signals and body language. Thus, Henderson's nervous behavior, constant fidgeting, the location of the vehicle (turning off of a street known for drug activity), and the faint odor of marijuana emanating from the vehicle gave the officers reason to believe that criminal activity could have been afoot and that Henderson could have been armed and dangerous. *See Wilson*, 519 U.S. at 414-15; *see also Terry*, 392 U.S. at 30-31.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that Henderson's motion to suppress be denied.

Respectfully submitted this 7th day of December, 2016.

                             s/Diane K. Vescovo
                             DIANE K. VESCOVO
                             CHIEF UNITED STATES MAGISTRATE JUDGE

NOTICE

ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN TEN (10) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. 636(b)(1)(C). FAILURE TO FILE THEM WITHIN TEN (10) DAYS

MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.

ANY PARTY OBJECTING TO THIS REPORT MUST MAKE ARRANGEMENTS FOR A TRANSCRIPT OF THE HEARING TO BE PREPARED.